Donald Stets, Appellant v. McKeesport Area School District, Appellee.

Argued October 30, 1975, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*George B. Stegenga,* for appellant.

*Lewis J. Nescott,* for appellee.

OPINION BY JUDGE MENCER, December 18, 1975:

This is an appeal from an order of the Court of Common Pleas of Allegheny County affirming the action of the Board of School Directors (Board) of the McKeesport Area School District (District) upholding the suspension of Donald Stets (appellant), a professional employee. Mr. Stets was suspended from his job as an industrial arts teacher because of a decrease in enrollment.

Many school districts throughout the Commonwealth are currently being faced with decreasing enrollments. In response, the school boards, unfortunately, must often reduce their staffs. The Public School Code of 1949

(Code)[1] provides a procedure to be followed under those circumstances. Section 1125 of the Code (24 P.S. §11-1125) provides in relevant part:

"(a) Whenever a board of school directors decreases the size of the staff of professional employes, *the suspensions to be made shall be determined by the district superintendent on the basis of efficiency rank* determined by ratings made in accordance with standards and regulations, determined by rating cards prepared by the Department of Public Instruction, as required by section one thousand one hundred twenty-three of this act. . . .

"(b) In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights, acquired within the school district of current employment, where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating. *In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards.*" (Emphasis added.)

The rating cards, currently known as DEBE-333 (5-72), are controlled by Section 1123 of the Code (24 P.S. §11-1123):

"[T]he professional employe or temporary professional employe shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique, and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction, and to be revised, from time to time, by the Department of Public Instruction. . . ."

---

1. Act of March 10, 1949, P. L. 30, *as amended*, 24 P.S. §1-101 et seq.

We find that the rating and suspension procedures under the Code were followed correctly in this case, and we affirm the court below.

The basic facts in this case are not in dispute. Appellant had been employed by the McKeesport Area School District for eight years as an industrial arts teacher. For the last six school years he was a professional employee entitled to tenure. In June of 1973, it was determined that enrollments in the machine shop course offered by the District would only support one teacher. A Mr. Robert Watson had the lower rating of the two machine shop teachers and would ordinarily have been suspended under the procedures in the Code. However, Mr. Watson was also certified to teach industrial arts. He was therefore added to the group of industrial arts teachers in the district. This, of course, left one extra industrial arts teacher in the district. After comparing the ratings of the industrial arts teachers, including Mr. Watson, it was determined that the appellant had substantially the lowest rating. On July 9, 1973, the Board voted to furlough the appellant pursuant to Section 1125(b) of the Code. He was notified by a letter dated the following day.

Appellant then asked for, and was granted, a hearing before the Board pursuant to the Local Agency Law.[2] The Board found that he was properly suspended. Mr. Stets appealed to the Court of Common Pleas of Allegheny County, which affirmed the Board without taking additional testimony. Appellant alleges error in that the District did not use an approved rating system in compliance with Section 1123 of the Code. He also alleges that Mr. Watson was improperly included for consideration as an industrial arts teacher when ratings were made. We cannot agree.

Our scope of review in these cases is defined as follows:

2. Act of December 2, 1968, P. L. 1133, 53 P.S. §11301 et seq.

"When a complete record of the proceedings before the local agency has been made and no additional testimony has been taken before the court below, we are required to affirm the action of the local agency unless we find that it was in violation of the constitutional rights of the appellant, or that the agency manifestly abused its discretion or committed an error of law, or that any finding of fact made by the agency and necessary to sustain its adjudication is not supported by substantial evidence. Acitelli v. Westmont Hilltop School District, 15 Pa. Commonwealth Ct. 214, 325 A.2d 490 (1974)." *Hickey v. Board of School Directors of Penn Manor School District,* 16 Pa. Commonwealth Ct. 319, 322, 328 A.2d 549, 551 (1974).

The rating form at issue here (see fig. 1) is a yellow card entitled "Temporary and Professional Employe's Rating Sheet" and numbered DEBE-333 (5-72). The rating portion of this card is divided into four main columns headed: I Personality, II Preparation, III Technique, and IV Pupil Reaction. Under each heading are nine spaces, some of which are filled with printed subcategories of the respective headings. To the right of each main column is a smaller column which runs the length of the larger column and is headed with a checkmark. On the left-hand side of the form are spaces entitled "Rating," "Seniority," and "Total." These seem to be the only spaces provided for the entrance of figures.

| Last Name | First Name | Middle Name | Commonwealth of Pennsylvania DEPARTMENT OF EDUCATION Box 911, Harrisburg, Pa. 17126 |
|---|---|---|---|

District (I.U.) — Temporary and Professional Employe's Rating Sheet

| Satisfactory Service of employe sufficiently acceptable to justify continuation of employment | Name of Person Rating | Unsatisfactory Improvement is essential to justify continuance in service. | Name of Person Rating |
|---|---|---|---|
| | Position | Date | Position | Date |

| I PERSONALITY | ✓ | II PREPARATION | ✓ | III TECHNIQUE | ✓ | IV PUPIL REACTION | ✓ |
|---|---|---|---|---|---|---|---|
| 1. Physical Characteristics | | 1. Professional Attitudes | | 1. Planning and Organization | | 1. Enthusiasm | |
| 2. Emotional Stability | | 2. Technical Knowledge and Skill | | 2. Individualization | | 2. Power to Appraise | |
| 3. Social Adjustment | | 3. Continuity of Prof'l Growth | | 3. Classroom Generalship | | 3 Normal Development | |
| 4. Professional Relationships | | 4. Subject Matter Scholarship | | 4. Manipulation of Materials | | 4. Expression | |
| 5. Judgment | | 5. Language Usage | | 5. Ability to Compromise | | 5. Subject Matter Progress | |
| 6. Habits of Conduct | | 6. Civic Responsibility | | 6. | | 6. Habits of Thinking | |
| 7. | | 7. Dependability | | 7. | | 7. Habits of Conduct | |
| 8. | | 8. Appreciations and Ideals | | 8. | | 8. Attitudes | |
| 9. | | | | 9. | | 9. | |

**GENERAL RATING**

1. Each school official who rates an employe should use a rating card for each rating given.

2. The responsible school official will first rate the employe in general terms of satisfactory or unsatisfactory. If an employe is to be rated satisfactory, the signature of the person doing the rating must be in the block opposite satisfactory, if unsatisfactory, in the block opposite unsatisfactory.

3 Ratings should have the support of anecdotal records. In the case of UNSATISFACTORY ratings, such records must be maintained in the office of the superintendent of schools and a copy supplied to the employe immediately after is has been completed

Rating_____ Seniority_____ Total_____

**DETAILED APPRAISAL**

1. When an unsatisfactory rating is given an employe, the school official must place a check in the block opposite that rating.

2. In this respect it is entirely possible that a gross deficiency in a single quality might be sufficiently serious to warrant a total rating of unsatisfactory even though other items were not marked at all

3. Whenever an unsatisfactory rating is given, each such recorded rating must be stated and the specific circumstances cited. The record must include specific details of evidence likely to be important, in case the services of a teacher are to be discontinued or dismissed.

**Final Rating SATISFACTORY**

I certify that the above named employe has

taught for _____ years _____ months

under my supervision from _____

to _____ , and has received from me a final rating of "SATISFACTORY."

_____
Date  I.U. Director or Dist. Superintendent

Use "FINAL RATING" when reporting to School Boards or Department of Education. "FINAL RATING" may represent a number of separate ratings during period of employment.

DEBE-333 (5-72)

**Final Rating: UNSATISFACTORY**

I certify that the above-named employe has

taught for _____ years _____ months

under my supervision from _____

to _____ , and has received from me a final rating of "UNSATISFACTORY."

_____
Date  I.U. Director or Dist Superintendent

Figure 1

Both parties agree that the rating system approved by the Department of Education awards up to 20 points for each of the main headings on the card, for a total of 80 points, with one additional point awarded for each year of service up to 20. A total of 100 points is thus theoretically possible. Appellant contends that the subtotals of each main column must be shown on the card and the total entered in the "Rating" space, while the Board contends that no subtotals are necessary. Appellant further alleges that the figure on his rating card for 1973 was merely transferred to the approved form from another—unapproved—rating system used by the School District.

A close scrutiny of form DEBE-333 (5-72) convinces us that no spaces are expressly provided for subtotals in each main column. The small column to the right of each larger column provides space for a checkmark in the event of an *unsatisfactory* rating.[3] Nor is our opinion changed by language on the reverse of the card reading:

"[I]n cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating card. Indicate the numerical rating on a basis of zero to twenty points in each of the listed classifications—(1) Personality, (2) Preparation, (3) Technique, (4) Pupil reaction. To the total numerical score thus computed add one point for each year of experience as a regular full-time employe in the schools of this Commonwealth to a total not exceeding twenty points, recording the rating thus secured in the space available under the caption 'General Rating' as follows:

Rating 60      Seniority 10      Total 70"

3. Directions on the face of the card clearly read:

"1. When an unsatisfactory rating is given an employe, the school official must place a check in the block opposite that rating."

The example above shows figures in only those spaces already provided for the entrance of an aggregate rating. While a more specific rating could be made, it is not mandated by this form.

Mr. Stets' contention that a different rating system was used by the District and transferred to the card is not persuasive. The School District has a policy of labelling rating scores as follows:

| | |
|---|---|
| 72 to 80 | Outstanding |
| 64 to 71 | Good |
| 48 to 63 | Average |
| 41 to 47 | Needs immediate improvement |
| 40 and below | Unsatisfactory |

This system is clearly in addition to, not a change from, the approved system. It, too, has an 80-point ceiling (absent seniority). Indeed, such a verbal explanation of the rating numbers seems necessary since, although DEBE-333 (5-72) differentiates between "Satisfactory" and "Unsatisfactory" ratings, it does not explain what is to be considered an unsatisfactory numerical total. We find, therefore, that the District did not use an unapproved rating system in this case.

We now turn to the question of the propriety of including the machine shop teacher, Mr. Watson, in the group of industrial arts teachers, thus causing the necessity to eliminate one teacher in that department. In *Welsko v. Foster Township School District*, 383 Pa. 390, 393, 119 A.2d 43, 44 (1956), the Pennsylvania Supreme Court stated:

> "Where a reduction in teaching staff is called for, the Board's first consideration should be how to retain those teachers with the longest years of service by realigning the staff so that the remaining teachers, after the reduction has been effected, can teach the subjects of those who, because of lesser seniority rights, have been suspended."

In this case, since Mr. Watson was certified to teach industrial arts, and other members of that department had less seniority, he was properly realigned by placing him in the industrial arts department.[4] As a second step, the Board, having found substantial differences in ratings, properly suspended Mr. Stets, the teacher with the lowest rating.[5] Indeed, had Mr. Watson been suspended rather than the appellant, he would surely be entitled to reinstatement under the holding in *Welsko,* supra.

Order affirmed.

---

4. Compare *Kelly v. School District of the Borough of Dickson City,* 64 Lack. Jur. 13 (1962), where realignment would have entailed serious dislocations of staff.

5. Mr. Watson's rating, including seniority, for the 1972-73 school year was 69; Mr. Stets' rating was 55.