Robert L. Fatscher *v.* Board of School Directors, Springfield School District, Appellant.

Argued October 7, 1976, before President Judge Bowman and Judges Crumlish, Jr. and Wilkinson, Jr., sitting as a panel of three.

*D. Barry Gibbons,* with him *Gibbons, Buckley and Smith,* for appellant.

*Alexander A. DiSanti,* with him *Richard, Brian, DiSanti & Hamilton,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, January 14, 1977:

Due to an alleged decrease in pupil enrollment, the Board of School Directors (Board), of Springfield School District, Delaware County, suspended Robert L. Fatscher ( appellee), a tenured professional employe, pursuant to Sections 1124 and 1125 of the Public School Code of 1949 (Code).[1] Upon receiving notice of this action, appellee demanded a hearing before the Board pursuant to the provisions of the Local Agency Law, Act of December 2, 1968, P.L. 1133, 53 P.S. §11301 et seq. After the Board refused to honor his demand, appellee filed a complaint in mandamus in the Delaware County Court of Common Pleas seeking to compel the Board to provide a hearing. This complaint was accompanied by a motion for peremptory judgment pursuant to Pa. R.C.P. No. 1098. The Board filed preliminary objections in the

[1] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§11-1124, 11-1125. Section 1124 provides:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

. . . .

Section 1125 provides the procedure for determining which employes, based on efficiency rating and seniority, are to be suspended.

nature of a demurrer, and, after argument, the court below issued an opinion and order dismissing the preliminary objections and granting appellee's motion for peremptory judgment. Thereafter, the Board filed a petition to open judgment,[2] which, after hearing, was denied and this appeal followed.

The Board contends that the court below erred in granting relief in mandamus inasmuch as the appellee had no clear legal right to a hearing, there was no corresponding duty in the Board, and an alternate and adequate remedy exists which appellee has failed to pursue.[3] Specifically, the Board argues that while the Local Agency Law is applicable to school districts,[4] there is no right to a hearing in this case because the suspension of a tenured professional employe due to decreased enrollment is not an "adjudication" nor is the appellee a "party" to any proceeding before the Board within the meaning of Section 2 of that statute, 53 P.S. §11302, which provides, in pertinent part:

> As used in this act:
>
> (1) 'Adjudication' means any final order, decree, decision, determination or ruling by a local agency affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjucation is made. . . .
>
> . . . .
>
> (3) 'Party' means any person who appears in a proceeding before a local agency who has

---

[2] The Board was required to file such a petition before appealing. See *Hamby v. Stoe*, 448 Pa. 483, 295 A.2d 309 (1972) and *Mertz v. Lakatos*, 21 Pa. Commonwealth Ct. 591, 347 A.2d 753 (1975).

[3] See *City of Greensburg v. Cooper*, 14 Pa. Commonwealth Ct. 419, 322 A.2d 152 (1974); *Hutnik v. Duquesne School District*, 8 Pa. Commonwealth Ct. 387, 302 A.2d 873 (1973).

[4] *McDonald v. Penn Hills Township School Board*, 7 Pa. Commonwealth Ct. 339, 298 A.2d 612 (1972).

a direct interest in the subject matter of such proceeding.

The Board contends that while Section 1124 of the Code grants it the authority to reduce the professional staff for the reasons stated therein, the process of identifying the specific employe or employes affected is merely a ministerial act of the superintendent pursuant to Section 1125 of the Code, which provides, in pertinent part:

> (a) Whenever a board of school directors decreases the size of the staff of professional employes, the suspensions to be made shall be determined by the the [sic] district superintendent on the basis of efficiency rank determined by ratings. . . .

Further, the Board argues, Section 1124 of the Code is only a delegation of authority to school boards and not a grant of rights to employes. The Board would thus have us conclude that the process of suspending the appellee is not an ''adjudication'' by the Board affecting appellee's personal or property rights and that he is not a ''party'' to any proceeding before the Board. Finally, the Board points out, appellee has an alternate and adequate remedy in the form of a ''Complaint Procedure,'' adopted by the Board, through which he can contest his suspension. We reject all of these arguments and will, therefore, affirm.

We note first that only the Board has the authority to suspend a professional employe pursuant to Section 1124 of the Code. Consequently, any suspension must be the result of a Board action or decision regardless of the superintendent's role in determining which particular employe or employes are to be suspended *by the Board.*

Further, Section 1124 of the Code, by enumerating four reasons for the suspension of professional employes, *does*, in effect, grant the employes the right

to be suspended for those reasons *only*. *Cf. Kretzler
v. Ohio Township*, 14 Pa. Commonwealth Ct. 236, 322
A.2d 157 (1974). Moreover, Section 1125 of the Code
grants employes subject to suspension a number of
additional rights (including those relating to seniori-
ty and reinstatement) by prescribing the procedure
by which suspended employes must be selected.

Without a hearing, the affected employes have no
means of insuring: (1) that one of the reasons for
suspension enumerated in Section 1124 does, in fact,
exist; and (2) that the procedure prescribed in Sec-
tion 1125 has been followed. It is precisely for the
purpose of providing a procedure, where none other-
wise exists,[5] to enforce such rights that the Local
Agency Law was enacted. *Smith v. Board of School
Directors of The Harmony Area School District*, 16
Pa. Commonwealth Ct. 175, 177, 328 A.2d 883, 885
(1974); *McKelvey v. Colonial School District*, 22 Pa.
Commonwealth Ct. 207, 348 A.2d 445 (1975); *Kretzler,
supra.* Not surprisingly, the rights of professional
employes suspended because of decreased enrollment
have been the subject of a number of appeals to this
Court originating from Local Agency Law proceed-
ings.[6]

The action of the Board in suspending the appel-
lee was clearly a "decision" or "determination" af-
fecting his "personal or property rights" within the

---

[5] The appeal procedure under the Code, 24 P.S. §11-1127 et seq.,
applies to *dismissals* but not *suspensions* of tenured professional em-
ployes. *Harmony, supra. See also* Section 10 of the Local Agency
Law, 53 P.S. §11310.

[6] *Gabriel v. Trinity Area School District*, 22 Pa. Commonwealth
Ct. 620, 350 A.2d 203 (1976); *Stets v. McKeesport Area School Dis-
trict*, 22 Pa. Commonwealth Ct. 403, 350 A.2d 185 (1975); *Harmony,
supra;* and most recently, *Phillippi v. School District of Springfield
Township* (Montgomery County),    Pa. Commonwealth Ct.    ,
    A.2d    (1977), where we held that Sections 1124 and 1125
only apply to *tenured* professional employes.

meaning of an "adjudication" in Section 2 of the Local Agency Law. Pursuant to Section 4 of that statute, 53 P.S. §11304, such adjudication is not valid as to the appellee "unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." Consequently, appellee had a clear right to a hearing, and the Board had a corresponding duty to provide one.[7]

The Board's final argument relates to the existence of a "Complaint Procedure," which allegedly constitutes an alternate and adequate remedy that appellee has refused to pursue. This procedure merely provides that employes with a "complaint or problem" should first meet with their principal and, if no solution is reached, "talk the matter over" with the superintendent and finally "review the problem" with the Board. However, once it is determined that an action is an adjudication under the Local Agency Law, it is clear that any hearing provided must comply with the procedural requirements of that statute. Contrary to the Board's naked assertion that its "review" pursuant to the "Complaint Procedure" would constitute a hearing under the Local Agency Law, there is no provision in that procedure which even begins to satisfy the requirements of a Local Agency Law hearing.

## ORDER

Now, January 14, 1977, the orders of the Delaware County Court of Common Pleas granting appellee's motion for peremptory judgment pursuant to Pa. R.C.P. No. 1098 and denying appellant's petition to open judgment are hereby affirmed.

---

[7] The Board's argument that appellee was not a "party" to any "proceeding" before the Board, to the extent it is based on the fact that *there never was a proceeding*, of course, begs the question. The reference to a "proceeding" in Section 2 of the Local Agency Law merely contemplates the hearing requirement in Section 4 and does not otherwise affect the definition of what is an adjudication.