Board of Education of Fairview School District, Appellant v. Gordon W. Tomb, Appellee.

Argued October 30, 1978, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

*Donald C. Buseck,* with him *Gary V. Skiba,* and *Quinn, Gent, Buseck & Leemhuis, Inc.,* for appellant.

*M. Richard Mellon,* for appellee.

*Daniel L. R. Miller* and *Christine Hall McClure,* and *McClure, Dart, Miller, Kelleher & White,* for amicus curiae, Douglas Weigel.

OPINION BY JUDGE CRAIG, February 15, 1979:
This is an appeal by the Board of Education of Fairview School District (Board) from an order of

the Court of Common Pleas of Erie County reinstating Gordon Tomb to the position of elementary school principal. We affirm.

Tomb was employed in the Fairview School District as principal of Chestnut Elementary School from January 31, 1972 until July, 1977, when a decline in student enrollment in the district led the Board, under Section 1124 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1124 (Code), to curtail services at the elementary level,[1] by suspending four elementary teachers and one elementary principal, Mr. Tomb.

Tomb contested his suspension, and the Board upheld it after a local agency hearing. Tomb appealed to the lower court pursuant to Section 7 of the Local Agency Law, 53 P.S. §11307.[2] The lower court sustained Tomb's appeal, and ordered him reinstated as an elementary school principal. The Board appealed to this Court.

To suspend a professional employee, Section 1125 of the Code, 24 P.S. §11-1125, mandates specific procedures:

§11-1125. Suspensions and reinstatements; how made

---

[1] The Board changed their Manchester Elementary School to a kindergarten and first grade facility, and their Chestnut Elementary School to a second through fifth grade facility.

[2] Tomb had filed a mandamus action in the lower court, seeking reinstatement. On August 23, 1977, Judge McClelland dismissed the mandamus action and a declaratory judgment action brought in the case, but preserved the right of the parties to proceed under the Local Agency Law, Act of December 2, 1968, P.L. 1133, 53 P.S. §11301 et seq. The Local Agency Law has since been repealed by Section 2(a) of the Act of April 28, 1978, P.L. 202, effective June 27, 1978. However, it has been replaced by the Local Agency Law, 2 Pa. C.S. §§551-55 and 751-54, which is substantially the same as the prior law.

(a) Whenever a board of school directors decreases the size of the staff of professional employes, the suspensions to be made shall be determined by the the [sic] district superintendent on the basis of efficiency rank determined by ratings made in accordance with standards and regulations, determined by rating cards prepared by the Department of Public Instruction, as required by section one thousand one hundred twenty-three of this act. . . .

(b) In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights, *acquired within the school district of current employment,* where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating. In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards. . . . (Emphasis supplied.)

Tomb has been compared for rating purposes from the beginning of this dispute with Douglas Weigel, who was employed by the district as principal of Manchester Elementary School from August 23, 1973 until June 30, 1977, and who since that date has served as the principal of both the Manchester and Chestnut Schools. Tomb had less total length of service than Weigel within the Commonwealth, but more seniority than Weigel within the district.

The issue raised in this case is whether length of professional service within the Commonwealth can be a factor in rating professional employees for the purpose of suspension where candidates are otherwise identically situated, when Section 1125(b) of the Code

specifically uses the term seniority to mean length of service "within the school district of current employment."

Presumably to Section 1125 of the Code, the Department of Education (Department)[3] had promulgated a rating card designated DEHE-333 (1/71),[4] which the Board used to rate Tomb and Weigel. On the reverse side of the rating card, paragraph 5 of the definition section states:

> 5. When the number of professional employes within a district must be reduced, the county or district superintendent shall appraise the accumulated ratings of such employes and suspend the employe with the lowest rating first, next lowest second and so on; *where no substantial difference in rating can be determined through such appraisal, seniority or service rights shall be the determining consideration*; in cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given considera-

---

[3] The Department of Public Instruction was changed to the Department of Education by the Act of July 23, 1969, P.L. 181, 71 P.S. §1037 et seq.

[4] The parties in their briefs, and the lower court in its opinion, all refer to this rating card as form DEBE-333. The only rating cards for Tomb and Weigel which appear in the record are designated DEHE-333, which apparently are the ones to which the parties and the lower court refer. However, in *Stets v. McKeesport Area School District*, 22 Pa. Commonwealth Ct. 403, 350 A.2d 185 (1975), this Court also dealt with a Department rating card. Judge MENCER in his opinion reproduced the front of the card, and quoted a portion of the back of the card which contained the exact language with which we are concerned today. That card was labeled DEBE-333 (5/72). Therefore, it appears that DEHE-333 was updated in May of 1972, and the designation changed from DEHE-333 to DEBE-333 at some point. In any event, for our purposes, DEHE-333 and DEBE-333 were the same in all relevant respects.

tion in accordance with principles and standards of weighting incorporated in the rating card. Indicate the numerical rating on a basis of zero to twenty points in each of the listed classifications—(1) Personality, (2) Preparation, (3) Technique, (4) Pupil Reaction. *To the total and numerical score thus computed add one point for each year of experience as a regular full-time employe in the schools of this Commonwealth to a total not exceeding twenty points,* recording the rating thus secured in the space available under the caption 'General Rating' as follows:

Rating  60  Seniority  10  Total  70 (Emphasis supplied.)

Following the mandate of the Department's rating card, the Board gave both Tomb and Weigel the maximum of eighty points in the four rating categories. However, although Tomb had more seniority than Weigel within the district, the length of his service in the schools of the Commonwealth totaled only 13½ years to Weigel's 25 years. Therefore, Tomb was given a seniority factor of 13½, and Weigel was given the maximum of 20. The result was that Tomb's total rating was 93½ to Weigel's 100. Because the Board's policy was that a rating difference of 5 constituted a substantial difference, Tomb was suspended.

We agree with the Board that Section 1125 of the Code must be read together with Section 1123 of the Code, 24 P.S. §11-1123, which states:

In determining whether a professional employe shall be dismissed for incompetency, and in rating the services of a temporary professional employe, the professional employe or temporary professional employe shall be rated by an approved rating system which shall give due

consideration to personality, preparation, technique, and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction, and to be revised, from time to time, by the Department of Public Instruction with the cooperation and advice of a committee appointed by the Superintendent of Public Instruction. . . .

The Board argues that the statute gives the Department discretion to formulate the standards that will be used in evaluating professional employees. By considering paragraph 5 of the Department's rating card and Section 1125(b) together, the Board urges, a twofold system emerges, under which seniority is determined in the first instance by the number of years of service in the Commonwealth, and that figure is added, to a maximum of 20 points, to the rating based upon four categories listed in Section 1123. Only if there is then a substantial difference is the district seniority counted. We cannot agree.

The Department has been given broad powers by Section 1302 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §352, which states in relevant part: "The Department of Public Instruction shall have the power, and its duty shall be: (a) To administer all the laws of this Commonwealth with regard to the establishment, maintenance and conduct of the public schools. . . ." However, as Justice Pomeroy reiterated in *Girard School District v. Pittenger,*    Pa.    , 392 A.2d 261 (1978), there are two different bases for the rule-making powers which administrative agencies can employ in the discharge of agency responsibilities; the basis may be legislative—a statutory grant expressly authorizing rule-making—or the basis may be interpretative—to be inferred from authority to administer. *Uniontown*

*Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 313 A.2d 156 (1973). The rating card at issue here, and more specifically the definition in question, is a form of rule-making by the Department. Because Section 1302 of The Administrative Code of 1929 empowers the Department to "administer the . . . laws," whatever rule-making powers the Department has are interpretative. As Justice POMEROY said in *Girard*:

> 'An interpretative rule on the other hand depends for its validity not upon a *law*-making grant of power, but rather upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. While courts traditionally accord the interpretation of the agency charged with administration of the act some deference, the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation.' (Footnote omitted.) (Emphasis in original.)

Pa. at    , 392 A.2d at 263.

The plain language of the Code requires us to find that the inclusion in the rating system of length of service in the Commonwealth is violative of the legislature's intent. Section 1123 of the Code states that the rating system shall give due consideration to personality, preparation, technique and pupil reaction, and gives the Department the power to promulgate standards and regulations for the *scoring* of the categories. The only mention of seniority that appears in the Code is in Section 1125(b), which plainly states that the seniority to be considered is that acquired *within the school district of current employment.* That lan-

guage was added in 1949 and did not exist in the previous statute.[5]

In *Gabriel v. Trinity Area School District*, 22 Pa. Commonwealth Ct. 620, 628, 350 A.2d 203, 207 (1976), Judge MENCER of this Court, comparing DEBE-333 and a local school district rating system, stated:

> Both DEBE-333 and the Trinity worksheet award up to 20 points for each of four main categories of evaluation: personality, preparation, technique, and pupil reaction. *The score obtained is the unweighted rating. To this score is added one point for each year of service within the school district of current employment to a maximum of 20; the total is the weighted score.*

---

[5] The Act prior to the present Section 1125 of the Code was Section 1205(b) of the Act of May 18, 1911, P.L. 309, *as amended*, which stated in relevant part:

> Whenever a board of school directors (or board of public education) decreases the size of the staff of professional employes under the provisions of this act, the suspensions to be made shall be determined by the county superintendent of schools or the district superintendent, as the case may be, on the basis of efficiency rank determined by ratings made in accordance with the standards and regulations determined by rating cards prepared by the Department of Public Instruction. . . .

> In cases in which suspensions are to be made, professional employes shall be retained on the basis of seniority rights where no differences in rating are found. Seniority rights shall also prevail where there is no substantial difference in rating. In cases where there are substantial differences in rating of those under consideration for suspension, seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards hereinbefore referred to: Provided, That in cases in which suspensions are to be made during the school term immediately following the effective date of this act, professional employes shall be retained on the basis of seniority rights.

A close reading of Section 1125(b) reveals the procedure to be followed in determining the order of suspension. *First, the unweighted scores of those under consideration must be compared; if no 'substantial difference' appears, seniority rights prevail.* If there are 'substantial differences,' the section provides that 'seniority shall be given consideration in accordance with principles and standards of weighting incorporated in the rating cards.' (Emphasis supplied.)

Although the precise question of interpretation of the term "seniority" was not discussed in *Gabriel*, the analysis of the rating form and the statute is appropriate to the present case, because, as noted above, DEBE-333 had the same seniority language that is in dispute here.

As a result, we are compelled to find that the rating card used in the present case was invalid insofar as it considers length of service within the Commonwealth, but outside the district of current employment, as a factor in rating a professional employee. However, we should point out that the Department has since revised the rating card to comply with the Public School Code of 1949. 8 Pa. B. 2339.[6]

---

[6] The new form states:

SUSPENSION AND NUMERICAL WEIGHTING

When the number of employes within the district must be reduced, the intermediate unit executive director or district superintendent shall follow the procedures in Section 1125 of the Public School Code of 1949. In accordance with standards and weighting incorporated in this card, seniority is to be added to the rating only when a substantial difference exists in the ratings of those considered for suspension. Seniority will be given the weight of one point for each year of service in the school district of current employment to a total not to exceed 20 points.

468

Because the Board has determined that one principal must be suspended, we are required, in effect, to decide who it will be. The plain language of the Code requires us to hold in favor of Tomb. Accordingly, we affirm the order of the lower court reinstating Tomb.

Although Tomb requested back pay, we cannot deal with that element of relief because it has not been briefed or argued to us.

ORDER

AND Now, this 15th day of February, 1979, the order of the Court of Common Pleas of Erie County, docketed at Civil Division No. 4245-A, 1977, dated November 10, 1977, reinstating Gordon Tomb to the position of elementary school principal, is affirmed.