Carmichaels Area School District, Petitioner *v.* William W. Harr, Respondent.

Argued February 5, 1981, before Judges BLATT, MacPHAIL and WILLIAMS, JR., sitting as a panel of three.

*James Hook, Hook & Hook,* for petitioner.

*Ronald N. Watzman, Watzman & Elovitz,* for respondent.

OPINION BY JUDGE BLATT, May 6, 1981:

The petitioner, Carmichaels Area School District (school district), appeals from an order of the Secre-tary of Education which overturned its dismissal of William Harr (respondent) and ordered him reinstated with back pay.

The respondent was employed by the school district as principal of the Carmichaels Area Junior-Senior High School in Greene County. On January 19, 1978, at a school board meeting, the respondent was informed that he had been suspended without pay as of the beginning of the second semester of the school year for having used funds from a student activity account to purchase a clock, a stereo and a butler's-tray table for his personal use. On February 10, 1978, however, he was informed that he faced dismissal as a result of his alleged misconduct.

After its dismissal hearing on February 28, 1978, the school board concluded that the respondent had misappropriated money from the student activity fund and converted school property to his personal use and was therefore subject to the termination of his contract under Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1122.

The Secretary of Education, without conducting an additional hearing, concluded on appeal to him that the respondent had not misappropriated school property and ordered him reinstated, making the following findings concerning the items purchased from the school activities fund:

10. In the fall of 1977, Appellant, in his capacity as principal, received an advertisement for a grandfather clock kit from Emperor Clock Company.

11. In January 1977, Appellant ordered the clock kit using a check drawn on the high school

Activities Account and signed by the bookkeeper of that fund.

12. The clock kit was delivered in the spring, 1977, to the Carmichaels Area Junior-Senior High School.

13. In June, 1977 Appellant ordered a second clock kit and a butler table kit from the Emperor Clock Company.

14. The June purchases were made by a check requested by Appellant, drawn on the high school Activities Account and signed by the bookkeeper of that fund.

15. In the summer of 1977, the June purchases were delivered, in part, to the Carmichaels Area Junior-Senior High School together with a post office claim slip for the remaining packages.

16. Appellant claimed the remaining packages which he initially took to his residence; Appellant delivered the packages in November, 1977, unopened, to the Carmichaels Area Junior-Senior High School.

17. In March, 1977 Appellant purchased a stereo from the Radio Shack using a check drawn on the high school Activities Account and signed by the bookkeeper of that fund.

18. The stereo was delivered to the Junior-Senior High School and was kept in plain view in Appellants [sic] office in the Junior-Senior High School until he took it to his home the [sic] in the summer before commencing his sabbatical leave.

19. The setero [sic] was used in at least one student function, the senior picnic.

20. The stereo was returned to the district in November, 1977.

21. Appellant testified that he made all of the purchases for the district but that subsequent to the purchase of the first clock kit he decided to keep the kit himself, therefore, [he] reimbursed the Activities Account and purchased a second clock kit for the district's shop class.

22. Appellant discussed the purchases with district staff at various times.

23. The shop teacher testified that he discussed at least one clock purchase with Appellant and that he may have approved the purchase.

24. All items purchased were delivered to the Junior-Senior High and kept in plain view.

. . . .

29. There were no written school board regulations or policies governing the use of Activities Account General Fund.

30. Appellant was given no oral directives on the use of the Activities Account.

31. In years prior to 1977-78 various other items of school property were purchased with funds from the Activities Account General Fund.

The school district contends that, because the evidence presented by the parties was conflicting, we should accept the findings of the school board over those of the Secretary of Education. It also contends that the Secretary's findings are not based on substantial evidence.

The Secretary of Education is, of course, the ultimate fact finder in cases of this nature and he has the power to determine the credibility of witnesses, the weight of their testimony and the inferences to be drawn therefrom. *School District of Warren County v. Carlson,* 53 Pa. Commonwealth Ct. 568, 418 A.2d 810

(1980); *Grant v. Board of Centennial School District,* 43 Pa. Commonwealth Ct. 556, 403 A.2d 157 (1979). And our scope of review is limited to a determination as to whether or not an error of law has occurred or whether or not the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

The finding most vigorously contested by the school district concerns the respondent's use or misuse of the stereo which he purchased with school funds. Our review of the record leads us to conclude that there is substantial evidence to support the Secretary's conclusion that the respondent's storage of the stereo in his school office and at his home did not constitute misappropriation of school property. The respondent testified that he purchased the stereo components for use at student activities and that he felt it was unwise to use the stereo until a protective cabinet could be built to house the various components in a single unit. He testified that the stereo would quickly be broken if such a cabinet were not used, and other testimony indicated that he requested the school's industrial arts teacher to construct a cabinet, but that the teacher failed to do so, that the stereo was kept in plain view in his office, and that the stereo, like the other items of school property, was not used for the respondent's benefit either at the school or while it was stored at his home. While, therefore, this and others of the Secretary's findings were based on evidence which was controverted by other evidence, we must defer to his determination of credibility and conclude that this finding and the other findings were based on substantial evidence.

The parties have also raised and discussed in their briefs the issue as to whether or not the school district could properly suspend the respondent without pay pending the hearing on his dismissal. Section 1124 of

the Public School Code, 24 P.S. §11-1124, enumerates four reasons for the suspension of professional employees, and these reasons do not include misconduct. *Fatscher v. Springfield School District,* 28 Pa. Commonwealth Ct. 170, 367 A.2d 1130 (1977). The school district contends, however, that the respondent was properly suspended without a hearing because his retention posed an immediate, direct and serious danger to the students, and they cite the Supreme Court's decision in *Kaplan v. Philadelphia School District,* 338 Pa. 213, 130 A.2d 672 (1957). This case is inapplicable here, however, for we have affirmed the Secretary's findings that the respondent did not misappropriate school property.

ORDER

AND Now, this 6th day of May, 1981, the order of the Secretary of Education as in the above-captioned case is hereby affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.