Lincoln Intermediate Unit No. 12, Petitioner *v.* C. Michael Noble, Respondent.

Argued September 12, 1980, before Judges MENCER, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Richard C. Snelbaker, Snelbaker, McCaleb & Elicker,* for appellant.

*Thomas W. Scott, Killian & Gephart,* for appellee.

OPINION BY JUDGE MENCER, December 9, 1980:

The Lincoln Intermediate Unit (LIU) appeals from an order of the Secretary of Education (Secretary) which reversed a decision of the LIU Board of Directors (Board) to terminate the employment of C. Michael Noble (Noble). The Secretary found that Noble was a professional employee of LIU under Section 1101 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1101, and that his dismissal without a hearing was therefore improper. We affirm.

The Secretary found that Noble was hired by LIU during the final days of summer vacation prior to the 1977-78 school year, after four professional employees had resigned from the LIU staff. Noble was assigned by LIU to teach a class of brain-injured students at the Wrightsville Elementary School. This class had previously been taught by Karen Hale, who had been transferred to another classroom to replace one of the

four employees who had resigned. Ms. Hale had been and continued to be a professional employee of LIU.[1]

After Noble had been hired, a question arose as to his credentials. This question was eventually resolved and, on November 1, 1977, some ten weeks after Noble had been placed on the payroll, the Board finally approved his employment. The minutes of the board meeting, however, indicated that Noble was hired as a substitute for Karen Shettle, who had been granted maternity leave in the spring of 1977. Noble was tendered a written contract as a "temporary professional employee" but did not execute it. No other written contract was tendered by the Board.

At the end of the 1977-78 school year, without prior notice or hearing, Noble was informed that his services were no longer required by LIU. He instituted an action to challenge the procedure by which he was dismissed, and this appeal ultimately ensued.

Section 1101 of the School Code classifies public school employees as either "professional employees," "substitutes," or "temporary professional employees."[2] The significant difference between a professional employee and a temporary professional em-

---

[1] For this reason, it makes no difference to the result whether we treat Noble as replacing Hale or one of the four professional employees who resigned.

[2] Section 1101 of the School Code provides as follows:

As used in this article,

(1) The term 'professional employe' shall include those who are certified as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

(2) The term 'substitute' shall mean any individual who has been employed to perform the duties of a regular pro-

ployee is that a professional employee has been granted tenure. *Phillippi v. School District of Springfield Township,* 28 Pa. Commonwealth Ct. 185, 367 A.2d 1133 (1977). In this case, both sides agree that Noble had been awarded tenure prior to his application for employment with LIU, so that he could not have been hired as a temporary professional employee; he must have been hired as a professional employee or as a substitute. If he was hired as a substitute, then LIU's failure to renew his contract after the 1977-78 school year was not improper. If he was hired as a professional employee, then it is clear that his termination without notice or hearing was improper and he must be reinstated. *Langan v. Pittston School District,* 335 Pa. 395, 6 A.2d 772 (1939).

In resolving the question of Noble's status, we would normally look to the terms of his written employment contract and the official minutes of the board meeting at which his employment was approved. In this case there was no written employment contract. The Board tendered a written contract for employment as a temporary professional employee, but Noble correctly refused to sign it because he could not be employed as a temporary professional employee, having already been awarded tenure.

The Board argues that this lack of a written contract supports its position that Noble was hired as a

fessional employe during such period of time as the regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent.

(3) The term 'temporary professional employe' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal.

substitute because Section 1121 of the School Code, 24 P.S. §11-1121, requires that "[i]n all school districts, all contracts with professional employes shall be in writing." The Board overlooks *McCoy v. Lincoln Intermediate Unit No. 12,* 38 Pa. Commonwealth Ct. 29, 391 A.2d 1119 (1978), *cert. denied,* 441 U.S. 923 (1979), in which this court held that Section 1121 does not apply to intermediate units. Therefore, the absence of a written contract only means that we must look elsewhere to resolve the question of Noble's status.

The official minutes of the Board for November 1, 1977 indicate that Noble was employed as a maternity-leave substitute. Usually, the official minutes control in determining the status of an employee. *Commonwealth ex rel. Hetrick v. Sunbury School District,* 335 Pa. 6, 6 A.2d 279 (1939). But the official minutes will not control where they clearly contradict reality, *Mullen v. DuBois Area School District,* 436 Pa. 211, 259 A.2d 877 (1969), or where they would result in a contract which is contrary to the law, *Sakal v. Sto-Rox Schools,* 19 Pa. Commonwealth Ct. 639, 339 A.2d 896 (1975). Noble asserts that he was hired to replace a professional employee who had permanently resigned from the staff of LIU and that, as a matter of law, only another professional employee or temporary professional employee could be hired to fill that position. Therefore, it would have been unlawful for the Board to hire him as a substitute. We agree.

Throughout the record, only five vacancies are specifically identified as existing prior to the start of the 1977-78 school year at LIU. Four of these were created by the resignation of professional employees. The fifth was caused when a professional employee went on maternity leave, intending to return. There is undisputed evidence that the substitute position had been filled at the board meeting in August, before Noble was interviewed or hired by LIU. LIU obviously could

not hire a substitute to fill a vacancy which no longer existed, so if the vacancies which did exist could not be filled by a substitute, then the Secretary's conclusion that Noble was hired as a professional employee was well supported.

In considering whether the Board could lawfully hire a subsitute to replace a professional employee who resigned, we first look to the relevant statutory provisions. Section 1101(2) of the School Code is ambiguous in this regard, in that it says a substitute may be hired to replace a professional employee who is "absent." This could mean either temporarily or permanently absent; the intention of the General Assembly is not clear.

Section 1922 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922, provides:

> In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:
>
> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

If a substitute could be hired to replace a professional employee or temporary professional employee who resigned, then school boards could subvert the tenure system by gradually replacing professional employees and temporary professional employees with substitutes. This would clearly be an absurd result, given the importance of protecting tenure. *See Sakal v. Sto-Rox Schools, supra.*

In a similar case, the Supreme Court has held that, where a vacancy occurred because a professional employee was on military service but was expected to return at the expiration of that service, a temporary vacancy existed which could only be filled by a substi-

tute teacher. *Love v. Redstone Township School District,* 375 Pa. 200, 100 A.2d 55 (1953).[3] The Court went on to point out that "[i]f the absence or leave were permanent then the position was to be filled by a temporary professional employe who later would be elevated to permanent status if found qualified." *Id.* at 204, 100 A.2d at 57. *See also Tyrone Education Association v. Tyrone Schools,* 24 Pa. Commonwealth Ct. 483, 356 A.2d 871 (1976).

We conclude that a substitute can only be hired to "fill in" for an absent professional employee or temporary professional employee who is expected to return. A person hired to replace a professional employee or temporary professional employee who is *not* expected to return must, himself, be a professional employee or temporary professional employee.[4] The Secretary found that Noble was hired to fill a vacancy caused by the resignation of a professional employee who was not expected to return. This finding cannot be overturned because it is supported by substantial evidence in the record.[5]

---

[3] The relevant language of Section 1101 of the School Code has not been substantially altered between 1949 and the present.

[4] We recognize that there is a third situation which may arise. If a professional employee leaves unexpectedly during the school year and is not expected to return, it may be difficult to find a suitable replacement immediately. In such a situation, it might be reasonable for the school district to employ a substitute to fill in for a short time while an active search is made for a replacement, because the substitute does not *replace* the professional. The propriety of this arrangement is not before us in this case. Here, there was no active search to find another teacher to fill the vacancy. The Secretary properly found that Noble was initially hired as a *replacement* because of the nature of his duties and the duration of his employment.

[5] While the initial burden was on the school board to show that the dismissal was proper, *Abington School Board v. Pittenger,* 9 Pa. Commonwealth Ct. 62, 69, 305 A.2d 382, 385 (1973) (quoting from *Swink's Case,* 132 Pa. Superior Ct. 107, 200 A. 200 (1938)), it was

204

Therefore, we enter the following

ORDER ·

AND NOW, this 9th day of December, 1980, the order of the Secretary of Education, dated September 10, 1979, reversing the decision of the Board of Directors of the Lincoln Intermediate Unit No. 12 to terminate the employment of C. Michael Noble, is hereby affirmed.

the burden of Noble to show that he was a professional employee entitled to the statutory protections when the Board minutes indicated the contrary.