Brenda V. Pickup, Trustee for Sharon Teachers Assoc. et al., Appellants *v.* Sharon City School District, Appellee.

Argued November 14, 1984, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL, BARRY, COLINS and PALLADINO.

*Daniel R. Delaney, Delaney and Evans,* for appellants.

*William G. McConnell, Cusick, Madden, Joyce and McKay,* for appellee.

OPINION BY JUDGE CRAIG, January 7, 1985:

Six public school teachers and their union have appealed a decision of the Court of Common Pleas of Mercer County which, in a declaratory judgment action, concluded that, although they are tenured profes-

sional employees, the Public School Code of 1949[1] does not entitle them, when they have been suspended because of an enrollment decline and temporary replacement opportunities thereafter arise, to be recalled to the limited-term jobs, either (1) in order of their seniority, or (2) at the salary grade related to their professional employee status.

There is no dispute concerning the Sharon City School District's lawful suspension of these professional employee teachers because of enrollment decline, in accordance with section 1124 of the Code, 24 P.S. §11-1124. For the 1981-1982 school year, the school district recalled them as temporary replacements for other professional employees on sabbatical or maternity leave of absence for the period of that year. The district, although it voluntarily followed seniority, claims that it was not required to do so. The district paid the recalled teachers at the first step of the bachelor degree salary schedule, not at the steps they had previously attained as professional employees. Their collective bargaining agreement is silent concerning the applicability of seniority to such recalls and also as to salary grade entitlement when the district thus temporarily recalls professional employees.

Close examination of the interrelated Code provisions is essential to resolve the statutory interpretation problem in this case.

Code section 1101(1), 24 P.S. §11-1101(1), defines "professional employee" to include "those who are certificated as teachers . . . ." Subsection (2) of that section defines "substitute" as

any individual who has been employed to perform the duties of a regular professional em-

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 through 27-2702.

ployee during such period of time as the regular professional employee is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors . . . .

Although that provision describes a "substitute" as anyone filling a position from which the regular professional employee is "absent," without any explicit limitation as to whether the absence is temporary or permanent, two decisions—*Love v. Redstone Township School District,* 375 Pa. 200, 100 A.2d 55 (1953) and *Lincoln Intermediate Unit No. 12 v. Noble,* 55 Pa. Commonwealth Ct. 197, 423 A.2d 49 (1980)—have construed the provision as equating "substitute" with the role of replacing a professional employee who is absent temporarily.

Before 1979, the temporal aspect of the replacement was determinative. This court held that a professional employee recalled in 1976 as a temporary replacement held the status of an untenured substitute, even when the district used a professional employee's form of contract. *Bitler v. Warrior Run School District,* 62 Pa. Commonwealth Ct. 592, 437 A.2d 481 (1981).

By the same token, before 1979 this court held that a suspended professional employee's reinstatement rights did not include any entitlement to be employed as a substitute in a temporary replacement situation. *Alwine v. Board of School Directors of Richland School District,* 39 Pa. Commonwealth Ct. 541, 395 A. 2d 1052 (1979). That case involved Code section 1125(c), as it stood in 1977, before the 1979 amendment discussed below. That previous section 1125(c), *formerly* 24 P.S. §11-1125(c), stated that:

(c) No suspended employe shall be prevented from engaging in other occupation during the period of such suspension. Suspended profes-

sional employees shall be reinstated in the inverse order of their suspension. No new appointment shall be made while there are suspended professional employees available, who are properly certified to fill such vacancies.

In interpreting that section, this court placed suitable stress on the verb "reinstated," noting that its dictionary sense refers to replacement *in a former position*. Alwine proceeded to hold that the position of a temporarily absent professional employee is a position for a substitute, not "the former position" of a suspended professional employee. The opinion also noted, from the Supreme Court's *Love* decision, that

[t]he vacancy which the legislature intended a temporary professional employee to occupy is a position to which a teacher will not return. If there were no vacancy *in this sense* then this position was to be filled by a substitute. (Emphasis in original.)

375 Pa. at 204, 100 A.2d at 57. *Alwine* hence declared that there would be a *vacancy* (for a professional employee's reinstatement) only if the absent teacher was not going to return to that position, and that, because the absent teacher in that case was in fact going to return, no *vacancy* existed. In matters relevant to this case, the Code did not use the term "vacancy" until the Act of November 20, 1979, P.L. 465, §2, repealed Code section 1125 and, by its §3, replaced the repealed section with Code section 1125.1, 24 P.S. §11-1125.1, the new section centrally involved in this case.

Of salient concern is subsection (d)(2) of section 1125.1, which presently provides

(2) Suspended professional employees shall be reinstated on the basis of their seniority within the school entity. No new appointment

shall be made while there is a suspended professional employee available who is properly certificated to fill such vacancy. *For the purpose of this subsection,* positions from which professional employees are on approved leaves of absence shall *also* be considered temporary *vacancies.* (Emphasis added.)

Although the first two sentences, using the word "reinstated" and referring to a "vacancy" as to which a "new appointment" is required, would seem to leave the law as *Alwine* expressed it—giving suspended professional employees no entitlement as temporary replacements—the last sentence reflects a legislative intent to change the law. That last sentence expressly relates itself to "this subsection," which is, of course, the subsection dealing with the reinstatement of suspended professional employees, and that last sentence goes on to say that positions requiring temporary replacements because of leaves of absence shall *also* be considered temporary *vacancies.* In accordance with the fundamental rule of interpretation that the legislature intends the entire statute, all of its terms, to be effective, 1 Pa. C. S. §1922(2), one cannot ignore the elements of that sentence which (1) relate it to the purpose of *professional employee* reinstatements, and (2) state that temporary replacement opportunities shall *also* be considered vacancies, albeit temporary ones.

Certainly the General Assembly could have said it more clearly. The trial judge put stress on the word "temporary" without attributing to "vacancies" the import applied to "vacancy" by the section's preceding sentence—namely, a position to which a professional employee may be reinstated. He frankly conceded that the purpose of the word "also" was a "complete mystery" to him. Hence, he understandably

concluded that the sentence was intended to continue the treatment of temporary openings as substitute positions, rather than as professional employee reinstatement positions. However, that little word "also" is crucial. To be wholly satisfied with the trial court's earnest interpretation, one must leave that word aside, as the judge conscientiously felt he was forced to do. But, when we remember from *Alwine* that a vacancy is a position having no occupant, nor any person expected to return to it, the word "also" becomes important. When some meaning is attributed to every word, a reasonable conclusion is that the legislature intended to indicate that henceforth the temporary absence positions would *also* be considered vacant, and thus intended to accord professional employee status to the replacements who occupy them, if those replacements held that tenured status previously.

Our construction, although independently reached, is in accordance with a decision of the Secretary of Education, in July of 1982, interpreting the same new Code provision in *Joyce L. Welby v. Dunmore School District*, Sick Leave Appeal No. 1-82. The case before the secretary involved a suspended professional employee recalled to fill the position of a professional employee on an approved leave of absence. The question was whether the recalled teacher was entitled to all rights of a professional employee in that situation, including sick leave entitlement. The secretary decided:

Section 1125.1(d)(2) mandates that suspended professional employees be granted priority by districts filling "temporary vacancies" created by professional employees on approved leaves of absences. When a suspended professional employee is recalled, whether to fill a permanent position or to fill a temporary vacancy

created by an approved leave of absence, that employee returns with their professional status intact.

Although administrative interpretation of a statute is not controlling, when the public officer charged with its application construes it, the courts accord "significant" weight to his experienced reading. *Masland v. Bachman*, 473 Pa. 280, 291, 374 A.2d 517, 522 (1977).

Earlier, in August, 1980, the Department of Education had issued an information circular to Pennsylvania school administrators advising, with respect to section 1125.1(d)(2), that

our interpretation of this subsection is that it mandates that priority be given to properly certificated, furloughed, professional employees when a district fills "temporary vacancies" created by professional employees absent on approved leaves of absence. This is a change in law. Prior to Act 97 approved leaves of absence would have in all cases been filled by substitutes.

Thus, the administrative interpretation, parallel to our own, has been consistent.

The question is not wholly settled, however, without considering related provisions within the new section. In close connection with subsection (d)(2), there are the following subsections:

(d)(1) No suspended employee shall be prevented from engaging in another occupation during the period of suspension.

. . . .

(3) To be considered available a suspended professional employee must annually report to the governing board in writing his current ad-

dress and his intent to accept the same or similar position when offered.

(4) A suspended employee enrolled in a college program during a period of suspension and who is recalled shall be given the option of delaying his return to service until the end of the current semester.

Here the school district, and also the trial judge, read subsection (d)(3) above, which requires a suspended professional employee to express willingness to accept recall, as mandating that a suspended professional employee desirous of returning *must* accept any recall, even when only to a "temporary vacancy." On the basis of subsection (d)(1), which allows a suspended employee to work elsewhere, and subsection (d)(4) which allows a suspended employee to enroll in a college program, there has arisen the related contention that the legislature would not have intended to apply a mandated return provision to a suspended professional employee who might prefer to continue as a substitute in another district, or who might prefer to continue a period of education, rather than to return to a "temporary vacancy" of limited duration. However, the college program subsection expressly allows the suspended employee to defer returning until the end of a semester, and, because the willingness to accept may be "annually" reconsidered and restated, the employee has a yearly opportunity to re-evaluate the substitute teaching opportunity in another school district as against the opportunity for reinstatement within the home school district. Hence, a reading which couples temporary reinstatement opportunities with an annual commitment appears not to be irrational.

Finally, the trial judge put stress upon subsection (e) of section 1125.1, which permits teachers' unions

and school districts to negotiate matters embraced by the foregoing provisions of the section. His conclusion was that, in the absence of negotiation, the suspended professional employee's rights stood as they existed before the amendment. However, in default of negotiated terms on the subject at hand, there is no unavoidable basis for concluding that the non-negotiated rules necessarily must be those which prevailed before the amendment. Just as logically, we can read the new legislation to accord rights to a suspended professional employee in relation to any "temporary vacancy" as the basic rule applicable in default of negotiations.

In conclusion, therefore, in interpreting the application of subsection (d)(2) of section 1125.1 to the suspended professional employees involved in this case, we read the words of the amended legislation as providing that "[f]or the purpose of this subsection," positions from which professional employees are on approved leaves of absence shall "also" be considered "temporary vacancies" as to which the suspended professional employees shall be entitled to "be reinstated" as professional employees with their concomitant salary and benefits and "on the basis of their seniority within the school entity."

This conclusion requires reversal of the declaratory judgment.

## ORDER

Now, January 7, 1985, the final order of the Court of Common Pleas of Mercer County, dated June 15, 1983, is reversed, and this court holds:

1. The Public School Code requires that a school district recall suspended professional employees in order of their seniority to fill temporary vacancies created by approved leaves of absence; and

2. The law mandates that suspended professional employees so recalled shall be paid on their proper step of the salary schedule as professional employees.

Judge COLINS dissents.