520 A.2d 1266

Terrence O'Connor, Appellant *v.* Wattsburg Area School District, Appellee.

Argued October 9, 1986, before Judges BARRY, COLINS (P) and PALLADINO, sitting as a panel of three.

14

*Joseph P. Burt*, with him, *John J. Barber, Shamp, Arduini, Hain and Barber*, for appellant.

*Christine Hall McClure, McClure, Dart, Miller, Kelleher & White*, for appellee.

OPINION BY JUDGE PALLADINO, February 13, 1987:

Terrence O'Connor (Petitioner) appeals from an order of the Court of Common Pleas of Erie County which affirmed the decision of the Wattsburg Area School District School Board (Board) upholding Petitioner's suspension. We affirm.

Petitioner was hired as a professional employee for the Wattsburg Area School District on May 15, 1978. He is certified in social studies and driver's education. On July 18, 1983 the Board approved implementation of an alternative education program (program) for the 1983-84 school year, subject to approval by the Pennsylvania Department of Education (Department). Petitioner applied for the instructor position made necessary by the creation of the program. His application was approved by the Board on August 8, 1983. Approval to conduct the program, for the 1983-84 school year only, was received from the Department in a letter dated August 17, 1983.

At the end of the 1983-84 school year, the program was evaluated, and, based on the recommendation of

the district superintendent, the Board voted not to continue the program. During the same meeting, the Board approved Petitioner's transfer to teach 8th grade geography. This position was a temporary vacancy created by an approved sabbatical leave being taken by Karen Willey, the professional employee holding that position.

Petitioner was notified of the curtailment of the program and informed of his transfer to the geography vacancy by the district superintendent. At the end of the 1984-85 school year, Petitioner was informed that because of the program's curtailment, and in light of the return of Karen Willey to her geography position and Petitioner's seniority status,[1] he might be suspended. Shortly thereafter, Petitioner received a letter from the district superintendent, dated May 27, 1985, informing him that the Board had voted to suspend him at the commencement of the 1985-86 school year because of the program's curtailment in 1984.

Petitioner requested a local agency hearing on his suspension, which was held before the Board on July 29, 1985. The Board upheld the suspension in a decision issued August 5, 1985. Petitioner appealed to the Court of Common Pleas of Erie County, which, relying on the record of proceeding before the Board, affirmed the Board's decision.

Petitioner, on appeal, contends that the Board may not suspend a tenured professional employee at the end of a school year based upon the curtailment of an educational program at the end of the prior school year.

Our scope of review, when a complete record was made of the proceedings before the Board, is limited to

---

[1] Petitioner was the least senior certificate holder in both social studies and driver's education at the end of the 1983-84 and 1984-85 school years.

determining whether constitutional rights were violated, an error of law was made, the proceedings were in violation of the statutory requirements, and whether essential findings of fact, supported by substantial evidence, were made. Section 754 of the Local Agency Law, 2 Pa. C. S. §754. *See McKeesport Area School District Board of Directors v. Collins,* 55 Pa. Commonwealth Ct. 548, 423 A.2d 1112 (1980).

A tenured professional employee may only be suspended for the reasons set forth in Section 1124 of the Public School Code of 1949 (Code),[2] and his suspension must be in accord with the procedure and rights found

---

[2] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1124.

This section states:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated.

(1) Substantial decrease in public enrollment in the school district;

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction:

(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes.

(4) When new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

in section 1125.1 of the Code.[3] *Brinser v. Cumberland-Perry Area Vocational-Technical School Joint-Operating Committee,* 44 Pa. Commonwealth Ct. 554, 405 A.2d 964 (1979), *aff'd,* 494 Pa. 123, 430 A.2d 276 (1981).

---

[3] 24 P.S. §11-1125.

This section states:

(a) Professional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.

(b) Where there is or has been a consolidation of schools, departments or programs, all professional employes shall retain the seniority rights they had prior to the reorganization or consolidation.

(c) A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certified and which are being filled by less senior employes.

(d)(1) No suspended employe shall be prevented from engaging in another occupation during the period of suspension.

(2) Suspended professional employes shall be reinstated on the basis of their seniority within the school entity. No new appointment shall be made while there is a suspended professional employe available who is properly certificated to fill such vacancy. For the purpose of this subsection, positions from which professional employes are on approved leaves of absence shall also be considered temporary vacancies.

(3) To be considered available a suspended professional employe must annually report to the governing board in writing his current address and his intent to accept the same or similar position when offered.

(4) A suspended employe enrolled in a college program during a period of suspension and who is recalled shall be given the option of delaying his return to service until the end of the current semester.

Petitioner's suspension was based on Section 1124(2) of the Code, curtailment of an educational program. Petitioner does not dispute that the program was properly curtailed. Nor does he dispute that his suspension would have been proper under Section 1125.1 if it had occurred after the 1983-84 school year. His sole challenge is to the procedure the Board chose to follow which resulted in Petitioner's suspension being postponed until the year following the program's curtailment. Petitioner contends that in order for a suspension to be valid, it must occur concurrently with the statutory reason on which it is based.

Petitioner argues that Sections 1124 and 1125.1 must be interpreted as requiring notice of suspension, based on the curtailment of an education program, to be given no later than the end of the school year in which the curtailment occurred. Otherwise, he asserts, the statutory reason is not present and the "window of opportunity" in which suspension is proper has been forfeited. We do not find Petitioner's argument persuasive in light of recent interpretations of the Code.

In *Bristol Township School District v. Karafin,* 508 Pa. 409, 498 A.2d 824 (1985), *aff'g* 84 Pa. Commonwealth Ct. 52, 478 A.2d 539 (1984), our state Supreme Court held that suspended teachers who qualify for the

---

(e) Nothing contained in section 1125.1(a) through (d) shall be construed to supersede or preempt any provisions of a collective bargaining agreement negotiated by a school entity and an exclusive representative of the employes in accordance with the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act," however, no agreement shall prohibit the right of a professional employe who is not a member of a bargaining unit from retaining seniority rights under the provisions of this act. (f) A decision to suspend in accordance with this section shall be considered an adjudication within the meaning of the act known as the "Local Agency Law."

sabbatical leave of Section 1166 of the Code[4] cannot be denied that benefit, and that the grant of the mandated leave extends their employment for another school year, delaying the notice of suspension until that time. The Supreme Court noted that Section 1125.1 of the Code, which provides the statutory formula for determining who is to be suspended, would "not come into play until after the teacher returns from sabbatical leave." *Id.* at 417, 498 A.2d at 829 (1985).

Reliance can also be placed on the decision in *Pickup v. Sharon City School District,* 86 Pa. Commonwealth Ct. 630, 486 A.2d 543 (1985), where this Court interpreted the application of Section 1125.1(d)(2) to suspended professional employees. There we held:

[P]ositions from which professional employees are on approved leaves of absence shall 'also' be considered 'temporary vacancies' as to which the suspended professional employees shall be entitled to 'be reinstated' as professional employees with their concomitant salary and benefits and 'on the basis of their seniority within the school entity.'

*Id.* at 639, 486 A.2d at 547.

When the procedure used by the Board in this case is examined in light of these decisions, it is clear that the procedure was proper. While *Karafin* dealt specifically with professional employees' statutory entitlement to sabbatical leave prior to being suspended, its rationale, that suspension may not be necessary at a later time, leads us to conclude that professional employees must be allowed all their statutory rights prior to being suspended. This is in accord with the statutory purpose of the tenure sections of the Code[5] to ensure the 'main-

[4] 24 P.S. §11-1166.
[5] 24 P.S. §§11-1121 thru 11-1133.

tenance of adequate and competent teaching staff, free from political or arbitrary interference, whereby capable and competent teachers might feel secure, and more efficiently perform their duty of instruction.' *Welsko v. Foster Township School District*, 383 Pa. 390, 392, 119 A.2d 43, 44 (1956) (quoting *Walker's Appeal*, 332 Pa. 488, 491, 2 A.2d 770, 772 (1938)).

We held in *Pickup* that suspended professional employees are *entitled* to be reinstated to positions temporarily vacant due to approved leaves of absence. It follows that professional employees, who would otherwise be suspended, must be offered any position to which they would be entitled if suspended prior to the suspension being effected. To do otherwise would contradict the policy, expressed in *Karafin* and consistent with the statute, of not suspending professional employees until they have been accorded all their statutory rights. Therefore, it was not improper for the Board to delay Petitioner's suspension.

Petitioner, alternatively, claims that even if suspension may properly be delayed, the delay in this case violated his statutory rights under Section 1125.1 of the Code because he was not given the requisite "reasonable notice and opportunity to be heard." He argues that the one year delay before he received his notice of suspension prejudiced his ability to challenge the propriety of the curtailment. We find no merit in this contention.

Under the requirements of Section 1125.1 "[a] decision to suspend in accordance with this section shall be considered an adjudication within the meaning of the act known as the 'Local Agency Law.'" 24 P.S. §1125.1(f). Section 553 of the Local Agency Law, 2 Pa. C. S. §553, provides that "[n]o adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an op-

portunity to be heard." The reason for according suspended professionals a hearing is to provide them with a means of insuring that the reason for which they were suspended exists and that their selection was proper. *Fatscher v. Springfield School District,* 28 Pa. Commonwealth Ct. 170, 174, 367 A.2d 1130, 1132 (1977).

While there may be situations in which a delay of one year would prejudice professional employees in their ability to contest the reason for their suspension and their selection, thereby making the delay unreasonable, such a situation does not exist in this case. Petitioner has not argued that either the curtailment or his selection were improper. The record shows a vigorous cross-examination was conducted on both of these points and that the circumstances surrounding both were fully elucidated.[6] Petitioner had reasonable notice and opportunity to be heard.

In accord with the foregoing analysis, we affirm.

ORDER

AND NOW, February 13, 1987, the order of the Court of Common Pleas of Erie County in the above-captioned matter is affirmed.

---

[6] N.T. at 31-48.