## West Shore Education Association v.
## West Shore School District

*J. Paul Helvy,* for plaintiff
*Matthew M. Hoffman,* for defendant.

BAYLEY, *J.,* August 18, 1994—On June 17, 1994, plaintiffs, Janice L. Craugh and her bargaining unit, the West Shore Education Association, instituted a complaint seeking a declaratory judgment against defendant, West Shore School District.[1] Trial was held on July 27. The evidence was as follows.

Janice L. Craugh has lived at 209 Fox Drive, Mechanicsburg, for over 10 years. She was hired by defendant to teach sixth-through-eighth-grade home economics at the Allen Middle School commencing the 1990-91 school year. Upon receiving satisfactory ratings as a temporary professional for two school years,

---

1. 42 Pa. C.S. §7531 et seq. Section 7532 of the Declaratory Judgments Act provides, "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

plaintiff obtained tenured professional status.[2] Before the start of the 1992-93 school year, the school district sought to curtail its home economics program.[3] The Department of Education approved the curtailment, and on July 8, 1992, plaintiff was furloughed. On July 1, 1992, the school district had offered plaintiff a full-time teaching position in an alternative education program. Plaintiff did not feel qualified to teach students with behavioral problems. She and her bargaining unit entered into negotiations with the school district that resulted in a written memorandum of understanding of August 11, 1992. The memorandum included:

"*Craugh's Recall Rights.* The parties hereto agree that Craugh's refusal to accept the alternative education program teaching position offered by the district shall not be deemed to adversely affect any right of Craugh to recall to employment with the district as may be provided either by section 1125.1 of the Public School Code, 24 P.S. §11-1125.1, or the presently effective collective bargaining agreement between the district and the association."

The memorandum further set forth that plaintiff (1) would not contest her furlough, (2) released the school district from any liability arising from the furlough, (3) waived any right to challenge the furlough by grievance procedure or otherwise, and (4) waived unemployment compensation benefits. The memorandum provided:

"Notwithstanding the provisions hereof, the district and the association fully and completely reserve all of their respective contractual and statutory rights pertaining to the furlough and recall of professional em-

2. 24 P.S. §11-1108.
3. 24 P.S. §11-1124(2).

ployees within the bargaining unit represented by the association."

At the beginning of the 1992-93 school year, plaintiff, at the behest of the principal of the Lemoyne Middle School, sought placement on the teacher substitute list. On September 18, the school district formally approved her as a teacher substitute. She served as a substitute home economics teacher in the middle school during that school year. At the beginning of the 1993-94 school year, plaintiff removed her name from the teacher substitute list.[4] On January 3, 1994, the school district advertised for a Teen Parenting teaching position which plaintiff was certified to teach. Plaintiff notified the school district in writing of her desire to accept that position. The school district filled the position by transfer of another district teacher. On April 22 and June 1, additional positions became open for which plaintiff was certified. Plaintiff informed the school district in writing of her desire to accept those positions. The school district hired new employees for both positions.

Plaintiff seeks a declaration that the West Shore School District was required to reinstate and appoint her to positions that became available for which she was certified to teach. The school district maintains that plaintiff waived and failed to preserve any rights to reinstatement by failing for two years to annually report to the governing board of the district in writing her current address and her intent to accept the same position she previously held or a similar position when offered.[5]

---

4. When plaintiff was approved as a substitute teacher the school district notified her that she could have her name removed from the substitute list at any time, temporarily or permanently.

5. In its answer to plaintiff's complaint, the school district also averred (1) that plaintiff's notification to the school district before

The School Code at 24 P.S. §11-1125.1(d) provides:

"(1) No suspended employe shall be prevented from engaging in another occupation during the period of suspension.

"(2) Suspended professional employes or professional employes demoted for the reasons set forth in section 1124 shall be reinstated on the basis of their seniority within the school entity. *No new appointment shall be made while there is such a suspended or demoted professional employe available who is properly certificated to fill such vacancy.* For the purpose of this subsection, positions from which professional employes are on approved leaves of absence shall also be considered temporary vacancies.

"(3) *To be considered available a suspended professional employe must annually report to the governing board in writing his current address and his intent to accept the same or similar position when offered.*

"(4) A suspended employe enrolled in a college program during a period of suspension and who is recalled shall be given the option of delaying his return to service until the end of the current semester." (emphasis added)

Initially, plaintiff maintains that eight days after the memorandum of understanding was signed on August 11, 1992, that she phoned the office of the director of personnel of the school district. She was not put through to the director but talked to a "woman" in

---

the 1993-94 school year that she desired to be removed from the district's substitute teacher list constituted a waiver and extinguishment of her rights of recall as a full-time teacher, and (2) that plaintiff's notification to the district that she desired to be removed from the district's substitute teacher list "equitably stops her from subsequently asserting entitlement to recall." The district did not brief or argue those positions at trial.

the office. She asked the woman when she had to file notice of her current address and her intent to accept a full-time teaching position when offered. Plaintiff testified the woman told her that no notice was necessary. Therefore, she maintains the school district cannot now refuse to recall her based on the notice requirement in section 1125.1(d)(3) of the School Code. At trial, the school district called the two women who work in the office of the director of personnel. They testified that they did not have any recollection of such a phone call nor did they have any written record of such a call as would have been their policy to make. They also testified that they did not have authority to answer such a question and that they would not have done so without consulting the director of personnel. We find that no one in the office of the director of personnel provided plaintiff with any information regarding the notice requirement in section 1125.1(d)(3) of the School Code that would legally bind the school district in this case.

Section 1125.1 of the School Code is part of the provisions on tenure in sections 1121 through 1133. The statutory purpose for the sections on tenure are to "ensure the maintenance of adequate and competent teaching staff, free from political or arbitrary interference, whereby capable and competent teachers might feel secure, and more efficiently perform their duty of instruction." *O'Connor v. Wattsburg Area School District,* 104 Pa. Commw. 13, 19-20, 520 A.2d 1266, 1269 (1987). (citations omitted) Plaintiffs maintain that we should interpret section 1125.1(d)(3) of the tenure sections consistent with the interpretation of arbitrators in *Indiana County Area Vocational-Technical School Operating Committee v. Indiana Vocational-Technical School Education Association* (1993) (Glosser, Arb.),

and *Conemaugh Township Area Education Association v. Conemaugh Township Area School District* (1991) (Blaufeld, Arb.). In each of those cases an arbitrator noted that there were two options in interpreting section 1125.1(d)(3):

"Either interpret the statute narrowly to arrive at a result which would mean the suspended professional employee once failing to report in writing to the governing board his current address and his intent to accept a same or similar position when offered, would be forever barred from being thereafter considered; or the alternative interpretation, which would be to require such reporting by the professional employee to be on an annual basis, with a failure to report disqualifying the suspended professional employee only for the year in which he failed to report in writing his current address and intent to the governing board."

In each case the arbitrator concluded that a professional employee does not permanently forfeit recall rights by failure to furnish annual written notice of availability and section 1125.1(d)(3) means that one forfeits such rights only for the school year in which no notice is given. The arbitrator in the *Indiana Area Vocational-Technical School* case did opine:

"Recall rights cannot and should not exist in perpetuity, but they can and should exist in situations of this nature for a reasonable and realistic period of time. It would appear to this arbitrator that the General Assembly of the Commonwealth would be the proper forum to set reasonable limitations, in order to guard against the administrative and practical burden of protracted recall rights."

There are no trial or appellate court cases in Pennsylvania interpreting section 1125.1(d)(3) on facts similar to this case. In *Pickup v. Sharon City School District,*

86 Pa. Commw. 630, 486 A.2d 543 (1985), six public school teachers and their bargaining unit appealed from a decision of the Court of Common Pleas of Mercer County holding that the School Code did not entitle them, after they had been suspended because of an enrollment decline and temporary replacement opportunities arose, to be reinstated to limited-term jobs either in order of their seniority or at a salary grade related to their professional employee status. The trial judge interpreted section 1125.1(d)(3) as mandating that a suspended professional employee desirous of returning must accept any employment, even when only to a temporary vacancy. The Commonwealth Court noted:

"On the basis of subsection (d)(1), which allows a suspended employee to work elsewhere, and subsection (d)(4) which allows a suspended employee to enroll in a college program, there has arisen the related contention that the legislature would not have intended to apply a mandated return provision to a suspended professional employee who might prefer to continue as a substitute in another district, or who might prefer to continue a period of education, rather than to return to a 'temporary vacancy' of limited duration. However, the college program subsection expressly allows the suspended employee to defer returning until the end of a semester, and, because the willingness to accept may be 'annually' reconsidered and restated, the employee has a yearly opportunity to re-evaluate the substitute teaching opportunity in another school district as against the opportunity for reinstatement within the home school district. Hence, a reading which couples temporary reinstatement opportunities with an annual commitment appears not to be irrational." *Id.* at 638, 486 A.2d at 546.

The Commonwealth Court concluded: "in interpreting the application of subsection (d)(2) of section 1125.1 to the suspended professional employees involved in this case, we read the words of the amended legislation as providing that '[f]or the purpose of this subsection,' positions from which professional employees are on approved leaves of absence shall 'also' be considered 'temporary vacancies' as to which the suspended professional employees shall be entitled to 'be reinstated' as professional employees with their concomitant salary and benefits and 'on the basis of their seniority within the school entity.' " *Id.* at 639, 486 A.2d at 546-47.

The Statutory Construction Act of 1972 at 1 Pa.C.S. §1921(a) provides, "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." Defendant maintains in its brief that, "[t]he annual provision of written notification is an *unequivocal* requirement for the preservation and exercise of a furloughed employee's right to reinstatement." (emphasis added) Section 1125.1(d)(2) of the School Code provides that, "No new appointment shall be made while there is such a suspended ... employe *available* who is properly certified to fill such a vacancy." (emphasis added) Subsection (d)(3) then provides that, "To be *considered available* a suspended professional employe must annually report ... his current address and his intent to accept a same or similar position when offered." (emphasis added) If subsection (d)(3) said, *that to remain available,* rather than *to be considered available,* a suspended employee must annually report, defendant's position would be correct. The statute does not say that, and it therefore does not unequivocally

provide for a loss of all reinstatement rights in the present case.

The school district perceives a litany of ills related to seniority and the hiring of employees with the most experience that will befall the district if its interpretation of the statute is not accepted by this court. These concerns do not apply to the facts of this case. Here, after being furloughed in the summer of 1992 and then working as a substitute home economics teacher during the 1992-93 school year, and despite not having filed annual written notices *in the form* set forth in section 1125.1 (d)(3), plaintiff put the West Shore School District on written notice of her desire to be reinstated for the Teen Parenting position which became available during the 1993-94 school year, which was the *first* full-time position that became available for which she was certified after her reinstatement rights under section 1125.1(d) of the School Code were acknowledged in the written agreement of August 11, 1992.[6] She did the same for the two subsequent positions that became available. This is not a case where, absent annual notices, one or more positions for which a furloughed employee was qualified to fill were filled by others, and thereafter, a written notice was filed by the employee under section 1125.1(d)(3) seeking reinstatement to subsequent available positions. Rather this is a case where the school district simply forged ahead and filled the Teen Parenting teaching position, and the two subsequent positions that

---

6. We believe that after the signing of the written memorandum of understanding, plaintiff thought she was entitled to reinstatement when a position became available that she was certified to teach. Preserving her reinstatement rights after turning down the offer to teach full-time in the alternative education program was the benefit she received in the written agreement of August 11, 1992.

became available, with other teachers, despite being notified in writing by plaintiff of her desire to accept those positions. The inescapable conclusion is that the West Shore School District did not want to reinstate its *tenured* professional employee to the Teen Parenting position or any other position when it became available, and seized upon its erroneous "unequivocal" forfeiture interpretation of section 1125.1(d)(3) to obtain that result. Accordingly, the following declaration is ordered.[7]

## DECLARATORY JUDGMENT

(1) Plaintiff Janice L. Craugh was entitled to be reinstated as a full-time professional teacher by defendant, West Shore School District, for the Teen Parenting position that was advertised by the school district on January 3, 1994.

(2) Defendant West Shore School District violated section 1125.1(d)(2) of the School Code when it failed to reinstate and appoint plaintiff to the Teen Parenting position that was advertised by the school district on January 3, 1994.

---

7. In addition to seeking a declaration of rights, plaintiff in her complaint seeks an order of back pay from January 3, 1994 at the appropriate salary step as provided for in the collective bargaining agreement between the West Shore School Association and the West Shore School District. Section 7538(a) of the Declaratory Judgments Act provides as a general rule, "[j]udicial relief based on a declaratory judgment or decree may be granted whenever necessary or proper. ... If an application for supplemental relief is deemed sufficient the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by a previously entered declaratory judgment or decree to show cause why further relief should not be granted." Plaintiffs may now file a petition for a rule to show cause to determine such supplemental relief as may be warranted based on the entry of the within declaratory judgment.